IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>BILLY LOVE DAWKINS, )<br>)<br>Defendant. )<br>) | Criminal No. 08-412 |

ORDER

AND NOW, this 9th day of January 2023, upon consideration of the renewed Reduction-in-Sentence/Compassionate Release Motion (Doc. No. 845),[1] filed by Billy Love Dawkins ("Defendant") *pro se* in the above-captioned matter on November 4, 2022,

IT IS HEREBY ORDERED that, for the reasons set forth herein, the Motion is DENIED.

**I.      Background**

Defendant is serving a 360-month term of imprisonment for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base. (Doc. No. 486). He is presently fulfilling that term at United States Penitentiary Big Sandy ("Big Sandy") in Inez, Kentucky. *Find an Inmate*, Bureau of Prisons (Jan. 9, 2023), https://www.bop.gov/inmateloc/. His anticipated date of release is March 20, 2036. *Id.*

On April 26, 2022, Defendant moved for a reduction in sentence ("RIS") wherein he indicated to the Court that he had first asked the warden at Big Sandy to "submit a compassionate release/reduction in sentence motion" on his behalf "utilizing the 'catch all' provision 1B1.13 cmt.n.1(D)" on October 30, 2021. (Doc. No. 834, Ex. A). In a letter dated

---

[1]      The Court has construed Defendant's filing at Doc. No. 845 as a renewed motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

1

August 3, 2022, the warden informed Defendant that he had not been found to meet the BOP's criteria for a motion and gave Defendant information about challenging that decision. (*Id.*).

Defendant filed his initial RIS motion before the Court prior to receiving his warden's August 3, 2022 denial. (Doc. No. 815). Shortly after Defendant moved for RIS, the Court appointed an attorney to help Defendant pursue his desired relief (Doc. No. 820) and set a schedule for briefing. (Doc. No. 821). However, Defendant thereafter filed a motion asking the Court to either substitute his appointed attorney for another or to evaluate his motion based on his *pro se* materials filed in support thereof. (Doc. No. 825). Defendant supplemented his request with a memorandum setting forth the legal and factual bases for his RIS motion and providing evidence relevant thereto. (Doc. No. 826). Defendant's court-appointed attorney subsequently moved to withdraw. (Doc. No. 827). The Court held the motion to withdraw in abeyance pending its consideration of Defendant's *pro se* materials (Doc. No. 828), but subsequently granted the motion. (Doc. No. 846).

After Defendant had presented his arguments for RIS to the Court, the Government responded in opposition (Doc. No. 831) and filed a supplement in support thereof. (Doc. Nos. 832, 834). Defendant responded/replied (Doc. No. 837) and further moved to supplement his case with new evidence. (Doc. No. 838). He also moved for a hearing so that the Court could (1) observe him in person and (2) hear testimony from former Drug Enforcement Administration ("DEA") Task Force Officer and Case Agent Michael C. Warfield. (Doc. No. 839). The Court granted Defendant's motion for leave to supplement his case with new evidence (Doc. No. 840) but did not rule on his motion for a hearing at that time. The Government then sought leave to file a further response and, with permission, so filed it. (Doc. Nos. 841—43). Defendant

subsequently moved to file another reply (Doc. No. 844) and further filed a renewed RIS Motion. (Doc. No. 845).

At this time, the Court has considered all the parties' arguments and evidence regarding Defendant's request for a reduction of his term of imprisonment or other relief. Because there is enough evidence in the record to adjudicate Defendant's motion, the Court has denied Defendant's motion for a hearing. (Doc. No. 848). For the reasons explained herein the Court will deny Defendant's renewed RIS motion (Doc. No. 845).[2]

## II.     Legal Analysis[3]

Courts' authority to modify imposed sentences is strictly limited. A court may "modify a term of imprisonment once it has been imposed" if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Such RIS motions come before the courts either "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant" who may move on his or her own behalf after asking the Bureau of Prisons ("BOP") to make a motion and then exhausting the BOP's administrative appeal process or waiting thirty days from the time that the warden of the defendant's BOP

---

[2]     Though the Government has not had an opportunity to respond to Defendant's renewed motion, it will not be prejudiced by the Court's decision to consider the renewed motion because, as Defendant has indicated, his "Renewed motion is identical in substance to the original and is only being filed to satisfy the Govt's concern about exhaustion." (Doc. No. 844). The Government responded to all the arguments in Defendant's original RIS motion (Doc. No. 815) which will be denied as moot following the entry of this Order.

[3]     Because Defendant has opted to pursue his motion without the assistance of counsel, the Court has employed the liberal construction it affords all *pro se* litigants. *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

facility received the request. *Id.*; *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (explaining Section 3582(c)(1)(A)'s exhaustion requirement).[4]

There is no statutory definition of "extraordinary and compelling reasons" except that Congress has ruled out "rehabilitation alone" as such. *United States v. Brooks*, No. CR 20-91, 2022 WL 1173196, at *4 (W.D. Pa. Apr. 20, 2022); 28 U.S.C. § 994(t). With respect to any further definition, Congress directed the United States Sentencing Commission ("USSC") to "describe what should be considered extraordinary and compelling reasons for sentence reduction" by "promulgating general policy statements" to that effect. 28 U.S.C. § 994(t). The USSC provided a definition[5] but the United States Court of Appeals for the Third Circuit has held that this definition is outdated and no longer binding because it predates the authorization of prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022). The USSC's definition remains a helpful guide, *id.*, but the only binding source directing courts' discretion with respect to extraordinary and compelling reasons is the statute itself. The ordinary meaning of terms employed therein dictates that, "at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both ***unusual*** (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison) and ***significant*** (*i.e.*, serious enough to make release appropriate)." *United States v. Somerville*, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020). With these procedural and substantive requirements in mind, the Court turns to its evaluation of Defendant's motion.

---

[4] Prisoner-initiated motions were authorized by the First Step Act (2018). *United States v. Claude*, 16 F.4th 422, 426 (3d Cir. 2021).

[5] The USSC's definition identified four extraordinary and compelling reasons: (1) the medical condition of the defendant; (2) the age of the defendant; (3) family circumstances; and (4) other reasons as determined by the BOP Director. U.S.S.G. § 1B1.13 cmt. n.1.

A. <u>Administrative Exhaustion</u>

At first glance, it appears as though exhaustion was complete at the time Defendant filed his initial RIS motion in April 2022: there is an October 30, 2021 request from Defendant to his warden asking that an RIS motion be submitted on his behalf after which more than thirty days passed before Defendant filed his original RIS motion. (Doc. No. 815). However, the Government has argued that not all the issues Defendant raised in that original RIS motion were first articulated in the 2021 warden request.[6] The Government has argued the exhaustion requirement in Section 3582(c)(1)(A) includes issue exhaustion such that Defendant must have raised any basis for a reduction to the BOP in his warden request prior to presenting such a basis to the Court. Defendant had initially countered that issue exhaustion is not required but, since that time, he has submitted a renewed RIS motion (Doc. No. 845) based on a later warden request wherein he more fully set forth the proposed bases for reduction he has presented to the Court.

---

[6] In his 2021 warden request, Defendant argued (1) that his thirty-year imprisonment term was extreme and disproportionate, (2) that his upbringing and youth at the time of his offense were not adequately considered at sentencing, (3) he had not been cited for any disciplinary incidents in over six years, (4) he had gone through programs that cultivated remorse and made him employable, (5) upon release he would have a stable residence and guaranteed employment, and (6) his release into the community would not be immediate on account of his concurrent sentence in the Commonwealth of Pennsylvania. (Doc. No. 815, App. A). Therein, Defendant also argued that his release would not be contrary to the Section 3553(a) factors. (*Id.*). In his original RIS motion, Defendant added several alleged extraordinary and compelling reasons. These added proposed reasons were: (7) he was penalized for delaying acceptance of a plea agreement until "the eleventh hour" by (a) not being given full credit for acceptance of responsibility and (b) being forced "to bear about ten times the Drug weight for which he pled guilty;" (8) he was forced to waive his right to file a motion to vacate pursuant to 28 U.S.C. § 2255 as part of his plea agreement and, therefore, could not pursue an ineffective assistance of counsel claim; (9) recidivism is unlikely because (a) defendants who have served over ten years' imprisonment are less likely to reoffend and (b) the effects of aging (from twenty-two at the time of the offense to thirty-eight) also reduces the risk of recidivism; and (10) his imprisonment has been adequately punitive in part because imprisonment during COVID-19 lockdown makes the time served more substantial. (Doc. No. 817).

As an initial matter the Court finds, as the Honorable Judge Conti did in *United States v. Briston*, that the BOP must "be given the opportunity to consider the same request made to the court." No. CR 05-321, 2022 WL 5109085, at *3 (W.D. Pa. Oct. 5, 2022); *United States v. McNair*, 481 F. Supp. 3d 362, 368 (D.N.J. 2020) ("Permitting inmates to bypass that requirement by presenting one reason for relief to the BOP and another to the Court would create an end-run around the exhaustion requirement and deprive the BOP of the opportunity to consider the request."). The Court acknowledges that there have been instances where the Court seemingly took a more permissive approach where unique circumstances were presented, *e.g.*, finding the impact of COVID-19 on a medical condition to be exhausted when a defendant filed a warden request based on a medical condition prior to the emergence of COVID-19 but the BOP reviewed the request at a time when COVID-19 concerns were well-known. *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *7 (W.D. Pa. Aug. 20, 2020). But no unique circumstances are present in this case.

Had Defendant not filed a second warden request and then renewed his RIS motion before the Court, his failure to exhaust several issues he has raised to the Court would have prohibited the Court's consideration of them. However, Defendant fully stated the proposed extraordinary and compelling reasons for RIS in his August 23, 2022 warden request (Doc. No. 838, Ex. 1) and renewed his motion more than thirty days after the warden would have received that request. (Doc. No. 845). Accordingly, the Court finds that Defendant has satisfied Section 3582(c)(1)(A)'s exhaustion requirement.

B.  <u>Extraordinary and Compelling Reasons</u>

Having found Defendant's proposed bases for RIS were exhausted before the BOP, the Court will evaluate whether these bases are "extraordinary and compelling" such that they

"warrant" a reduction of Defendant's term of imprisonment.  As explained *supra* at FN6, Defendant has argued there are approximately ten reasons that warrant a reduction.  Defendant has conceded that the reasons he has proposed would not warrant RIS individually but has argued that they combine to constitute extraordinary and compelling circumstances.  (Doc. No. 845, pg. 18).  Having considered Defendant's proposed reasons individually and in combination, the Court has determined that extraordinary and compelling reasons are not present.

***Defendant has argued the 30-year term of imprisonment imposed is extreme and disproportionate.***  For contrast, Defendant has pointed to other crimes that he perceives as more serious than his own, for which average terms of imprisonment are shorter than thirty years.  For example, Defendant has argued that "the median sentence for murder [in 2019] was 20 years, for sexual abuse 15 years, for kidnapping 10 years and Robbery 9 years."  (Doc. No. 826, pg. 1).  He has also argued that defendants whose criminal convictions are similar to his own often receive lesser terms of imprisonment.  The Court finds this reason is not extraordinary and compelling.  This proposed reason is strikingly dissimilar to the reasons the USSC had included in its previously applicable definition.  Not only that, but to the extent that Defendant has herein questioned the wisdom of sentences that may be imposed for conspiring to distribute and possess with intent to distribute cocaine/cocaine base compared to sentences imposed for other crimes, that is an argument more properly directed to lawmakers than the courts.  At Defendant's sentencing this Court lawfully imposed the thirty-year term of imprisonment at the bottom of the recommended range for Defendant.  (Doc. No. 508, pg. 3).  The term of Defendant's imprisonment having been lawfully imposed, the Court will not find that the duration of the term compared to other sentences is an extraordinary and compelling reason that warrants modification of Defendant's sentence.  *Andrews*, 12 F.4th at 261 (quoting *United States v.*

7

*Thacker*, 4 F.4th 569, 574 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1363 (2022));[7] *United States v. Taylor*, No. CR 03-238, 2022 WL 1321989, at *3 (W.D. Pa. May 3, 2022) ("Further, the Court has no reason to believe that Defendant, having been sentenced within the range that the Guidelines prescribed for his offense, is in an unusual circumstance as the compassionate release provision requires.").

***Defendant's next proposed extraordinary and compelling reason is that modern neuroscience, psychology, and sociology prove that his age and adverse childhood experiences deserved greater weight at the time of his sentencing than they received.*** He has acknowledged that the Court considered his age and upbringing at his sentencing but has argued that those factors would have worked more to his advantage today than they did in 2010. For support, Defendant has pointed to a change in the sentencing guidelines that has made age more relevant to departures,[8] and literature that shows adverse childhood experiences and their contribution to young adults' criminal activity is more widely acknowledged in current sentencings. While the

---

[7]    In *Thacker* the Seventh Circuit discussed whether a nonretroactive change to sentencing law could be an extraordinary and compelling reason for a sentence reduction. 4 F.4th at 576. The court held it could not and explained that finding extraordinary and compelling reasons for sentence reductions like "the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like," would "offend[] principles of separation of powers." *Id.* at 574.

[8]    Whereas age was described as "not ordinarily relevant" in guidelines at the time of Defendant's sentencing, U.S.S.G. § 5H1.1 (2004), the guidelines have since been amended such that age now "may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.1 (2010). With respect to this change, the Court notes that the former language did not bind the Court because, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the guidelines were *not* mandatory at the time of Defendant's sentencing. The Court recognized the advisory nature of the guidelines at the sentencing hearing in this matter (Doc. No. 508, pg. 3) and considered whether it might, in its discretion, find that Defendant's "disadvantaged upbringing and lack of guidance as a youth" justified a variance. (Doc. No. 508, pg. 30—31).

8

Court's discretion is broad enough to consider a wide range of factors in its assessment of extraordinary and compelling reasons, including age, *Andrews*, 12 F.4th at 262, the Court has determined that Defendant's age at the time of his offense and upbringing are not extraordinary and compelling reasons that would warrant reducing his term of imprisonment.  The Court reiterates its observation at Defendant's sentencing that "the defendant's claims regarding his disadvantaged upbringing and lack of guidance as a youth, as unfortunate as these circumstances may be . . . *are not unusual*."  (Doc. No. 508, pgs. 30—31) (emphasis added).  Addressing the lack of unusualness, the Court explained that Defendant's "case is not substantially different from those of many other criminal defendants that appear before this Court."  (*Id.*).  Now as then, Defendant has failed to show his age and upbringing make his case unique.  To the extent that developments in neuroscience/psychology/sociology may now offer a fuller picture of how age and upbringing affects relatively young adult offenders, Defendant's inability to bring those developments to bear on the sentence imposed upon him in 2010 is a circumstance shared by any defendant with a difficult upbringing who offended at a young age and continues to serve his or her term of imprisonment.

**Defendant's next proposed argument is that his lack of a BOP disciplinary incident in over six years demonstrates his rehabilitation.**  The Government supplied Defendant's Inmate Discipline Data record, and it corroborates Defendant's account of his disciplinary record with respect to the last six years; however, it also shows five incidents that occurred between February 2013 and November 2016.  (Doc. No. 831, Ex. B).  Several of these incidents appear to be serious: fighting with another person (11/8/2016), assaulting with serious injury (5/10/2014), and possessing a dangerous weapon (8/26/2013).  (*Id.*).  To the extent Defendant's recent conduct constitutes evidence of rehabilitation, the Court has considered it in combination with other

proposed reasons but may not find it alone warrants the relief sought by Defendant.  28 U.S.C. § 994(t).

*Defendant has relatedly argued that rehabilitation is shown by his conduct, e.g., that he has taken advantage of educational opportunities while incarcerated, cultivated remorsefulness, become employable and maintained a work detail, and has become a devout Muslim.*  In support of this argument, Defendant has discussed his work detail, that he has become an Imam at Big Sandy, and he has submitted letters of support from his partner, daughter, and a fellow inmate.  (Doc. No. 826, Apps. D and E).  The Court reiterates that this argument and evidence will only be considered in combination with Defendant's other proposed reasons.  28 U.S.C. § 994(t).

*Defendant's next argument is that he is not a danger to the community, in part, because of his plan for re-entry.*  He has submitted that his re-entry plan includes a stable residence with his partner and guaranteed employment at the Harvey Community Resource Center.  (Doc. No. 826, App. B).  The Court finds that while this is relevant to its overall consideration of Defendant's motion, it is not an extraordinary and compelling reason; rather, whether Defendant would be a danger to his community upon release is appropriate for any consideration of the Section 3553(a) factors.

The same is true of *Defendant's argument that extraordinary and compelling reasons warrant early release, in part, because he will likely still have time to serve pursuant to his concurrent 10-to-20-year sentence for third degree murder* and *Defendant's argument that his time served and age make him unlikely to recidivate.*  Defendant has not explained how the existence of his concurrent state sentence is an extraordinary or compelling circumstance.  That a reduction of Defendant's federal term of imprisonment would not necessarily mean he would

10

return to the community is more relevant to the section 3553(a) factors.[9] The likelihood that Defendant will commit further crimes upon release is also a Section 3553(a) consideration. Accordingly, Defendant's arguments that prisoners who have served over 120 months are unlikely to recidivate and that—at thirty-eight—he is older than most persons who commit drug offenses (Doc. No. 845, pgs. 11—12), will not be considered toward the extraordinary and compelling reasons determination.

Defendant's next arguments pertain to his plea agreement and, therein, a waiver of the right to move to vacate his sentence pursuant to 28 U.S.C. § 2255 or "to file any other collateral proceeding attacking his conviction or sentence." (Doc. No. 356, pg. 3). ***Defendant has argued extraordinary and compelling reasons exist because he was penalized for delaying acceptance of a plea agreement by (a) being denied full credit for acceptance of responsibility and (b) having an unreasonable amount of drug weight attributed to him.*** The problem with this argument is that Defendant has not explained how being denied additional acceptance of responsibility credit or the drug weight attributed to him makes his case extraordinary, *i.e.*, unusual. Defendant's argument is better characterized as a challenge to the correctness of his sentence, and compassionate release motions are not appropriate vehicles for such arguments.

This Court and others have cautioned that if Section 3582(c)(1)(A)(i) is read too broadly it would effectively upend the "specific statutory scheme authorizing post-conviction relief in 28 U.S.C. § 2255 and accompanying provisions." *Thacker*, 4 F.4th at 574. Strict limitations are imposed on the number of times that defendants may move to vacate a sentence, and an overly permissive approach to the compassionate release statute could inadvertently create a work-

---

[9]  In *United States v. Harris* this Court explained that the existence of detainer in the Commonwealth of Pennsylvania would not *preclude* granting an RIS motion. No. CR 10-80, 2020 WL 7769843, at *4 (W.D. Pa. Dec. 30, 2020).

around.  *United States v. Reed*, No. CR 06-193, 2021 WL 914203, at *4 (W.D. Pa. Mar. 10, 2021), *appeal dismissed*, No. 21-1720, 2021 WL 4808011 (3d Cir. July 21, 2021), *and reconsideration denied*, No. CR 06-193, 2022 WL 1120046 (W.D. Pa. Apr. 14, 2022); *United States v. Brown*, No. 2:12-CR-00224-1, 2020 WL 4345077, at *5 n.3 (W.D. Pa. July 29, 2020).

That Defendant's arguments in this regard are Section 2255 arguments masquerading as Section 3582(c)(1)(A) arguments is underscored by Defendant's 2011 motion to vacate.  (Doc. Nos. 564, 565).  Therein Defendant argued that his sentence should be set aside because he was not permitted to litigate the issue of drug weight for sentencing; however, the Court found that argument to be frivolous.  (Doc. No. 569, pg. 6).  The Court remarked that it had taken "two days of testimony" on "the attributable drug quantity" pursuant to Defendant's plea agreement which specified that the Court would determine the appropriate drug weight.  (*Id.*).  Defendant may not now relitigate his unsuccessful Section 2255 motion.  Accordingly, the Court rejects Defendant's attempt to reduce his sentence on the basis of the amount of credit he received for acceptance of responsibility or the amount of drug weight that was attributed to him.

***Relatedly Defendant has argued that extraordinary and compelling reasons are present because he was forced to waive the right to challenge his sentence pursuant to 28 U.S.C. § 2255(a) as part of his plea agreement and therefore lost the opportunity to challenge the effectiveness of his counsel.***  However, the Court finds this argument to be totally unpersuasive. In its order dismissing Defendant's Section 2255 motion, the Court explained that Defendant's waiver of "his right to file a motion under Section 2255 or to otherwise seek collateral relief" was not "anything other than knowing and voluntary."  (Doc. No. 569, pgs. 3—4).  Therefore, even setting aside the inappropriateness of the Court's consideration of the validity of such a waiver in its adjudication of an RIS motion, there is no merit to Defendant's argument that his

waiver would make his circumstances extraordinary and compelling. Defendant has argued that the waiver makes his circumstances extraordinary because, unlike other defendants, he was unable to challenge the effectiveness of his counsel, (Doc. No. 837, pg. 5), but many defendants have struck similar bargains with the Government. And, of course, the Court again notes that the Defendant did file a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 564). As indicated above, the Court dismissed the motion on January 27, 2012. (Doc. No. 569).

***Finally, Defendant has argued that the term of imprisonment he has served to date has been more punitive than intended because of COVID-19 restrictions.*** The Court acknowledges that incarcerated persons have faced tremendous stress since the emergence of COVID-19 due to the unpredictability of this highly contagious, deadly virus and measures to contain it in BOP facilities. However, this circumstance has affected *all* federal prisoners. The Court cannot call a circumstance shared by all federal prisoners unusual with respect to Defendant.

The Court's consideration of the combination of Defendant's proposed extraordinary and compelling reasons does not convince the Court that Defendant has presented reasons that are collectively extraordinary and compelling. Setting aside Defendant's argument that his lawfully imposed sentence is excessively long, his arguments that pertain not to extraordinary and compelling reasons but to Section 3553(a) factors, and his arguments wherein he has sought to challenge his Section 2255 waiver and the validity of his sentence, the Court is left with Defendant's age at the time of his offense and difficult upbringing, evidence of his rehabilitation, and his argument that his imprisonment to date has been more punitive than intended because of COVID-19. The combination of these factors is not extraordinary because they are true of any prisoner who committed his or her offense at an age prior to the time when modern neuroscience/psychology/sociology may show development is complete, has had several years

without incident in BOP custody and has taken steps toward rehabilitation, and has been incarcerated during the particularly stressful time of COVID-19.  Defendant has not proven to the Court that this set of circumstances is sufficiently unusual to justify a reduction of Defendant's term of imprisonment.  Accordingly, the Court declines to find extraordinary and compelling reasons in this matter.

### III. Conclusion

The Court having found no extraordinary and compelling reasons warranting a reduction of Defendant's term of imprisonment in this matter, it will deny Defendant's renewed RIS motion (Doc. No. 845).  Because Defendant has not shown extraordinary and compelling reasons that warrant a reduction of his sentence, the Court need not address the Section 3553(a) factors in its Order.

s/ Alan N. Bloch  
United States District Judge

cc:     Billy Love Dawkins, Reg. No. 30266-068  
       U.S. Penitentiary – Big Sandy  
       P.O. Box 2068  
       Inez, KY 41224